IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Rita R. Patel,                    :

      Plaintiff,              :

    v.                            :      Case No. 2:05-cv-0775

Lowes Home Centers, Inc., et al.: JUDGE HOLSCHUH
                                              MAGISTRATE JUDGE KEMP
      Defendants.             :

## REPORT AND RECOMMENDATION

    Plaintiff, Rita R. Patel, filed this action against her former employer, Lowes Home Improvement, alleging a number of causes of action surrounding the termination of her employment. She subsequently filed an amended complaint which added Gregory Lane, a Lowes employee, as an additional defendant. The amended complaint alleges that Mr. Lane sexually harassed her and that she was retaliated against for reporting that harassment to Lowes. She also asserted claims for sexual harassment, for termination in violation of public policy, for defamation, and for false imprisonment. The latter claims arise out of the reason given by Lowes for the termination of her employment. Lowes claimed that Ms. Patel engaged in theft activities while working as a Lowes cashier. Lowes also counterclaimed based upon its theft allegations.

    On December 8, 2006, Lowes filed a motion for a hearing and to enforce a settlement agreement which was allegedly entered into between Lowes and Ms. Patel in the summer of 2006. The matter was subsequently referred to the undersigned for the holding of the hearing and the issuance of a Report and Recommendation. The following constitutes the Court's

recommended findings of fact, conclusions of law, and disposition of the motion.

## I. RECOMMENDED FINDINGS OF FACT

Almost all of the facts relating to the motion to enforce the settlement agreement are undisputed.  They will be set forth in narrative form, and the Court will identify those areas where the facts are in dispute and a recommended resolution of those factual disputes.

One of the issues in this case is whether Lowes would be able to prove that Ms. Patel engaged in theft activities or whether it could prove that it had a good faith basis for believing that she did.  Obviously, if Lowes actually believed that Ms. Patel was stealing from the store, that would significantly undercut her claim that she was discharged because she complained about sexual harassment and would substantially affect her ability to prevail on her state law claims of defamation and false imprisonment.  Such evidence would also have an impact on Ms. Patel's ability to prove that the reasons given for her termination were a pretext for discrimination.  Finally, the evidence is vital to Lowes' counterclaim for theft damages.

Lowes filed a criminal complaint against Ms. Patel at or shortly after the time of her termination.  In connection with that criminal complaint, Lowes provided certain security tapes to the Dublin Police Department for review.  Apparently as a result of a transition between a more traditional VHS tape recording system and a computer-based digital recording system, the tapes which Lowes provided to the Dublin Police Department did not actually depict Ms. Patel engaged in any type of criminal activity.  That criminal case was subsequently dropped.

Once Ms. Patel filed this case, Lowes made a renewed effort to locate additional videotapes which showed Ms. Patel taking cash from her register.  Until July, 2006, it was unable to do

so. In July, 2006, however, things changed. Although the date on which the videotapes at issue were located is not reflected in the record, as early as July 5, 2006, Lowes' counsel met with Ms. Patel's counsel to show them clips from videotapes recorded in June and July of 2004 which, according to Lowes, showed Ms. Patel engaging in "refund fraud." According to Lowes, Ms. Patel was processing transactions which appeared to be customer requests for refunds using duplicate receipts and taking money from her cash register to pay for these refunds. Rather than giving the refunds to the customers, however, she was keeping the money for herself.

After showing the videotapes to Ms. Patel's attorneys, Spencer Youell and Merl Wayman, the attorneys advised Lowes that they needed to discuss the matter further with their client. Within the next two weeks, several things occurred. First, Lowes, acting through Eric Chase, its Loss Prevention Manager, filed a criminal complaint against Ms. Patel with the Dublin Police Department. Second, Ms. Patel, through her attorneys, hired an expert witness, one Mr. Powers, and requested him to review the tapes. He then met with Jeffrey Hiller, one of Lowes' attorneys, and several Lowes officials in Dublin, Ohio and viewed the original videotapes. According to Mr. Hiller, after reviewing the tapes and documents associated with the transactions which occurred on those days, Mr. Powers said "We don't represent thieves" and left the meeting. On July 19, 2006, David Kadela, another one of Lowes' attorneys, sent a letter to Mr. Youell suggesting that the continuation of this lawsuit would violate Rule 11 in light of the evidence that Ms. Patel had stolen from Lowes. Three days later, Mr. Youell called Mr. Kadela, stated that he had decided to "raise the white flag," and told Mr. Kadela that his client, Ms. Patel, would agree to the dismissal of her claims so long as Lowes agreed to dismiss its

counterclaims and to send a letter to the prosecuting attorney requesting that the criminal case be dropped.  In that same conversation, Mr. Youell requested that Lowes consider expunging Ms. Patel's file.  However, he also stated that he was not making expungement a condition of any settlement.  Mr. Kadela replied that he believed Lowes would agree to the basic proposal but he was not certain how Lowes would react to the request for expungement.  He agreed to talk to Lowes and find out if the case could be settled along the terms proposed by Mr. Youell.  At no time during this conversation did Mr. Youell state or imply that he did not have authority from Ms. Patel to make the settlement offer.

After this phone conversation, Mr. Kadela asked Mr. Hiller to contact Lowes to find out whether it would agree to the settlement.  Mr. Hiller did so and was advised that the basic terms of the settlement were acceptable but that Lowes would not agree to expunge Ms. Patel's record.  Mr. Hiller told Mr. Kadela that Lowes had agreed to the deal, and Mr. Kadela requested Mr. Hiller to call Ms. Patel's attorneys to tell them the same thing.  Mr. Hiller then spoke with Meryl Wayman, advised him that an agreement had been reached, and stated that Lowes' attorneys would prepare the settlement agreement.

After this conversation, Mr. Kadela prepared a settlement agreement and sent it to Mr. Youell.  When he had not received the agreement back by September 6, 2006, he called Mr. Youell, who said that Ms. Patel needed another week to review the document with her family members.  Although Mr. Kadela professed not to understand why a delay was necessary because the agreement was fairly straightforward and the terms had already been agreed to, he granted that additional week.  He did not speak with either of Ms. Patel's attorneys again until September 27, 2006, when he had a conversation with Mr. Wayman.  At that time, Mr.

4

Wayman told Mr. Kadela that Ms. Patel was to have met with Messrs. Youell and Wayman on September 22, 2006 but had not appeared for the meeting.  Mr. Wayman stated that they had mailed Ms. Patel a letter telling her that if she did not sign the agreement, they would withdraw from representing her.  Subsequently, Messrs. Youell and Wayman filed a motion for leave to withdraw which was supported by a sealed memorandum and exhibit.  The Court gave Ms. Patel the opportunity to respond to that motion, but she did not, and it was granted on November 1, 2006.  Ms. Patel then retained other counsel who represented her at the hearing on February 7, 2007.  She has never signed the settlement agreement.

Because Ms. Patel had not signed the agreement, Lowes did not request the prosecutor to drop the criminal case against Ms. Patel.  That case went to trial on December 19, 2006.  The only witnesses called at the trial were a Dublin police officer and Eric Chase, who, at the time of the trial, was no longer employed by Lowes.  Lowes did not provide any documentation to be used at the trial.  According to Ms. Patel, she did not testify and the case was dismissed.

The only fact which appears to be in dispute relate to whether Ms. Patel actually authorized Mr. Youell to make a settlement proposal on her behalf.  According to Ms. Patel, she was aware that Mr. Youell and Mr. Wayman were talking to Lowes' attorneys about resolving the case, but she told them that she would have to see a proposal in writing before she would agree to any settlement.  She testified that she never made any comment to Mr. Youell or Mr. Wayman to the effect that they should "raise the white flag" and agree to give up her claims in exchange for the agreement to dismiss the counterclaims and request withdrawal of the criminal complaint.  She agreed that Mr. Youell and Mr. Wayman recommended that she settle along those lines during a

telephone conversation and that this recommendation was made after they met with Messrs. Kadela and Hiller and reviewed the videotapes. However, she testified that she did not agree with that recommendation and again told them that she would have to review any settlement proposal with her family.

During her testimony, Ms. Patel was shown a portion of a letter written to her by Mr. Youell and Mr. Wayman on September 25, 2006 (Exhibit D4). The letter was attached as an exhibit to the sealed motion for leave to withdraw, but Ms. Patel's counsel did not object to having the first two sentences of the letter unsealed. The second sentence of the letter stated that Mr. Youell had been told my Ms. Patel that she accepted the settlement agreement and that he had communicated this "tentative" approval to Lowes' attorneys. Although Ms. Patel's testimony prior to being asked about this letter seemed to suggest that she had never agreed to settle the case, she testified that what Mr. Youell and Mr. Wayman said in that letter was "not a false statement."

Based upon the above recitation of the facts, it is recommended that the Court reach the following conclusions with respect to the decisional facts of this case:

1.  Ms. Patel retained attorneys Spencer Youell and Merl Wayman to represent her in litigation against Lowes.
2.  As part of that representation, she agreed both explicitly and implicitly that her attorneys could talk to the attorneys for Lowes about settling the case.
3.  Mr. Youell made a settlement offer to Mr. Kadela which was sufficiently complete and specific to permit an acceptance to be made and a contract to be formed. The essential terms of the offer were that Ms. Patel would dismiss her case with prejudice, that Lowes would

6

>   dismiss its counterclaims with prejudice, and that
>   Lowes would request that the prior criminal complaint
>   which it had filed be withdrawn. Additionally, Lowes
>   agreed that it would not file any new criminal
>   complaints or re-file that complaint against Ms. Patel
>   based upon her alleged theft activities while an
>   employee of Lowes.
> 4. Mr. Youell did not advise Mr. Kadela that the offer was
>    conditioned upon further approval by Ms. Patel.
> 5. The offer was communicated to in-house counsel for
>    Lowes, who advised Mr. Hiller that Lowes accepted the
>    settlement offer.
> 6. The acceptance of Mr. Youell's offer was communicated
>    by Mr. Hiller to Mr. Wayman.
> 7. The settlement agreement drafted by Mr. Kadela, with
>    exception of certain terms discussed more fully below,
>    essentially reflected the oral settlement agreement
>    between Ms. Patel's attorneys and Lowes.
> 8. Ms. Patel, through words or other actions indicating
>    assent, conveyed to Mr. Youell, in a way that a
>    reasonable person would rely upon, that she was
>    agreeable to a resolution of the case along the terms
>    subsequently communicated by Mr. Youell to Mr. Kadela.

The last recommended finding of fact is not, as more fully discussed below, essential to a finding that a binding settlement agreement was reached. However, the undersigned concludes that this fact is true. That conclusion is based upon the fact that Mr. Youell, an experienced attorney, did not convey to Mr. Kadela that the offer being made was contingent upon further approval by Ms. Patel, by the fact that Mr. Youell's subsequent letter to Ms. Patel reiterated the fact that she had approved the essential

7

terms of the settlement agreement, and by the equivocal nature of Ms. Patel's testimony concerning whether she had or had not conveyed that approval. The Court concludes that when Mr. Youell recommended that she settle the case, if she conveyed any hesitation about his recommendation, it had only to do with making sure that the terms of any written agreement were consistent with the oral agreement being authorized. It may well be that Ms. Patel did not appreciate the fact that the case could be settled by way of an oral agreement and believed that if she simply refused to sign a written agreement, she could not be bound. Whatever mental reservations she may have had, the evidence firmly suggests the conclusion that she and Mr. Youell had an objective meeting of the minds concerning the agreement even if her objective words and conduct did not reflect her subjective belief that she was not authorizing him to make a binding offer.

The Court will now discuss the significance of these factual findings in terms of the legal standards applicable to a claim that an enforceable settlement agreement has been reached.

## II.  DISCUSSION

A federal court has inherent authority to enforce agreements in settlement of litigation before it. See Therma-Scan, Inc. v. Thermoscan, Inc., 217 F.3d 414, 419 (6th Cir. 2000). The party relying on the settlement agreement has the burden of proving its validity by clear and convincing evidence. See Huffer v. Herman, 168 F.Supp.2d 815, 823 (S.D. Ohio 2001).

A threshold question in a case where a settlement agreement is sought to be enforced is which substantive law to apply. In a case where the federal court's jurisdiction is based solely on diversity of citizenship, the Court must apply the forum state's choice of law principles in order to determine which state's law to apply to the question. See Russell v. GTE Government Systems

Corp., 232 F.Supp.2d 840, 848 (S.D. Ohio 2002). If this were a diversity case, it seems clear that Ohio law would apply because Ms. Patel is an Ohio resident, the events underlying the case took place in Ohio, the litigation was filed in Ohio, and the settlement negotiations occurred in Ohio. However, Ms. Patel has asserted both federal and state law claims in her complaint. Thus, the Court is also required to consider whether federal common law principles come into play.

In Tiernan v. Devoe, 923 F.2d 1024 (3rd Cir. 1991), the court considered this precise question. It noted that federal common law is typically applied to questions involving some uniquely federal interest, and that applying federal law to the question of whether the federal claims had been settled while using state law (which might be different) to decide if the state law claims had been settled could eviscerate any agreement that covered both types of claims. Noting that the enforcement of a settlement agreement does not ordinarily involve unique federal interests, especially in a case like this one where the "focus is on an attorney's relationship with his clients," and perceiving the need for a consistent rule of decision, the Tiernan court elected to apply state law to the issue. Tiernan, 923 F.2d at 1033. See also Sun Studs, Inc. v. Applied Theory Associates, Inc., 772 F.2d 1557 (Fed. Cir. 1985)(applying state law to the question of whether a purported settlement of a patent case was valid). Although the presence of a Title VII claim in this case might complicate the analysis if Ohio law placed restrictions on the enforcement of settlement agreements which might be inconsistent with the federal policy favoring such agreements, see Fulgence v. J. Ray McDermott & Co., 662 F.2d 1207 (5th Cir. 1981)(applying federal common law where state law prohibited the enforcement of oral settlement agreements), no such inconsistency appears to be present here. The Court finds the Tiernan decision

9

to be persuasive and will therefore apply Ohio law to the question of whether a valid settlement agreement exists.

The leading case in Ohio on the issue of an attorney's authority to settle a client's claims holds that "[a]n attorney who is without special authorization has no implied or apparent authority, solely by virtue of his general retainer, to compromise and settle his client's claim or cause of action." Morr v. Crouch, 19 Ohio St.2d 24, syllabus ¶2 (1969); see also Southwestern Bell Tel. Co. v. Vidrine, 610 S.W.2d 803, 805 (Tex. Civ. App. 1980)(holding that "mere employment of counsel does not clothe the counsel with authority to settle the cause without the specific consent of the client"); Bennett v. Juzelenos, 791 A.2d 403, 408 (Pa. Super. Ct. 2002)(holding that "[t]he ordinary employment of an attorney to represent a client with respect to litigation does not confer upon the attorney the implied or apparent authority to bind the client to a settlement or compromise, and the attorney cannot do so in the absence of express authority").

Nevertheless, attorneys are often authorized by their clients to conduct settlement negotiations. Ohio subscribes to the rule that the authority to negotiate and settle a client's claim "need not be express, but may be ascertained from the surrounding circumstances." Elliott v. General Motors Corp., 72 Ohio App.3d 486, 488 (Marion Co. 1991). In fact, "[b]ut for this rule, prudent litigants could not rely on opposing counsel's representation of authorization to settle. Fear of a later claim that counsel lacked authority to settle would require litigants to go behind counsel to the opposing party in order to verify authorization for every settlement offer." Capital Dredge & Dock Corp. v. City of Detroit, 800 F.2d 525, 531 (6th Cir. 1986).

If an attorney settles a client's claims without having been given authority to discuss settlement with opposing counsel, that

10

settlement is not enforceable. See Morr, 19 Ohio St.2d at 29. However, if an attorney is given authority to negotiate a settlement, but settles the client's claims on terms unacceptable to the client, such a settlement is enforceable despite the client's lack of consent. See Argo Plastic Products Co. v. City of Cleveland, 15 Ohio St.3d 389, 392 (1984)(explaining that a $500,000 settlement was enforceable against the city because the city's attorney had authority to negotiate the city's claims even though the city had authorized only a $2,500 settlement). In these circumstances, the client's remedy, if dissatisfied, is an action against the client's attorney for professional malpractice. See id.

    Here, it is undisputed that Ms. Patel authorized her attorneys to engage in settlement discussions with Lowes. Rather than directing them not to raise the subject of settlement or telling them that she would not settle under any terms, she requested that they obtain a settlement proposal from Lowes and said that she would then consider the proposal once she saw it in writing. Under these circumstances, attorneys Youell and Wayman had sufficient apparent authority from Ms. Patel to bind her to a settlement agreement. Because there is no dispute that they made an unconditional settlement offer, that Lowes accepted the offer as made, and that Ms. Patel's attorneys then confirmed that a settlement had been reached on the terms they originally proposed, a binding settlement agreement was reached in this case.

    The Court's conclusion on this issue is further reinforced by its belief that Ms. Patel assented to the terms which were proposed by Mr. Youell. It may very well be that she believed, in her own mind, that the case would not be settled until she signed her name to a settlement agreement, and that she remained free to decline to settle the case even after Mr. Youell obtained

her assent to propose a settlement to Lowes containing the terms ultimately incorporated into the written settlement agreement. That is simply not the law, however.  Oral settlement agreements are enforceable in Ohio.  Consequently, the Court finds that Mr. Youell had not only apparent authority to make the settlement proposal which he made, but that he had Ms. Patel's actual authority to do so.  Under either circumstance, a binding settlement agreement was reached.

Ms. Patel has argued that the Court should refuse to enforce the settlement agreement because it can no longer be performed. Specifically, she notes that one of the bargained-for benefits to her from the settlement agreement was Lowes' agreement to request the prosecutor to drop the criminal case against Ms. Patel.  That criminal case has already been tried.  Consequently, it would literally be impossible for Lowes to perform that portion of the settlement agreement.

The settlement agreement, however, required Lowes to make that request only after ten days had passed after it received a signed copy of the settlement agreement from Ms. Patel.  Because she never signed the settlement agreement, her conduct prevented the performance of that condition.  It is simply inequitable to permit a party to render the performance of a portion of an agreement impossible and then to argue, based upon that impossibility, that the remainder of the agreement should not be enforced.  See Beder v. Cleveland Browns, Inc., 129 Ohio App. 3d 188, 196 (Cuyahoga Co. 1998) (holding that a party cannot avoid liability under a contract by virtue of his own act in making a condition precedent impossible to perform).  Consequently, the failure of this condition does not prevent the Court from concluding that a valid and enforceable settlement agreement still exists.

The other matter which concerned the Court at the hearing

was language in the settlement agreement indicating that Ms. Patel had seven days within which to reject the agreement after she signed it.  Counsel for Lowes testified that this language was not part of the offer made by Ms. Patel and was included in the agreement only as a means of trying to capture an additional benefit for Lowes, namely the valid release of any claims which Ms. Patel might have been able to assert under the Age Discrimination and Employment Act.  Ms. Patel did not assert any such claims in this case.  The Court concludes that the basic terms negotiated did not include that additional release and that the settlement agreement is valid and enforceable as to the claims and counterclaims asserted in this lawsuit without any provision designed to protect Lowes from future litigation based on an age discrimination claim.  Consequently, the agreement is enforceable without that term, and the Court finds that the term was not part of the oral agreement reached between Lowes and Ms. Patel.

### III.  RECOMMENDED CONCLUSIONS OF LAW

Based upon the foregoing discussion, it is recommended that the Court conclude that, as a matter of law, a valid and binding settlement agreement was entered into between Ms. Patel and Lowes as a result of both the apparent and actual authority of her attorneys to make a binding settlement proposal on her behalf. It is further recommended that the Court find that the settlement agreement is enforceable not withstanding the impossibility of performance concerning the term requiring Lowes to request the prosecutor to dismiss the pending criminal case against Ms. Patel.  Finally, it is recommended that the Court conclude, as a matter of law, that the language included in the draft settlement agreement giving Ms. Patel ten days within which to revoke the agreement after signing it was not part of the originally-negotiated agreement and therefore should not be enforced.

IV.  RECOMMENDED DISPOSITION

    The only other question before the Court is the appropriate remedy.  In some cases, the Court has simply ordered specific performance of a settlement agreement by directing the recalcitrant party to sign it.  Here, because the agreement does contain additional terms not included in the parties' original negotiations and because it contains a term which may no longer be performed, the Court does not believe that such an order would be appropriate.  The clear intent of the settlement agreement was to effect a dismissal of the claims and counterclaims in this case and to provide Ms. Patel with the additional protection that Lowes would not institute further criminal proceedings against her.  Therefore, the Court recommends a dismissal of this case with prejudice together with an order directing Lowes specifically to perform that part of the settlement agreement requiring it to refrain from instituting further criminal proceedings against Ms. Patel.

PROCEDURE ON OBJECTIONS

    If any party objects to this Report and Recommendation, that party may, within ten (10) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a _de novo_ determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. Section 636(b)(1).

    The parties are specifically advised that failure to object to

14

the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation <u>de novo</u>, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. <u>See</u> <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir.1981).

<u>/s/ Terence P. Kemp</u><br>
United States Magistrate Judge

15